**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **THERESA D. THOMAS, et al.,** | * | |
| *Plaintiffs* | * | |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| *Plaintiff-Intervenor* | * | **CIVIL ACTION NO. 6:65-cv-11314** |
| | * | |
| **vs.** | * | |
| | * | |
| **ST. MARTIN PARISH SCHOOL** | * | **JUDGE ELIZABETH E. FOOTE** |
| **BOARD, et al.,** | * | |
| *Defendants* | * | |
| | * | |

**************************************************************************

## CONSENT ORDER REGARDING ST. MARTINVILLE ZONE MAGNET AND DISTRICT-WIDE TRANSFER PROGRAMS

1

## INTRODUCTION

Plaintiff Class Representatives, Taylor Alexander, Tracie Borel, Genevieve Dartez, and Alainey Smith ("Plaintiffs") and the Plaintiff-Intervenor United States of America ("United States") (collectively, "Plaintiff Parties") and Defendant, St. Martin Parish School Board (the "Board" or "District") respectfully submit this Consent Order Regarding Magnet Program and Student Transfers, which attends to these issues regarding the District's fulfillment of its affirmative desegregation obligations in the area of student assignment.  The parties agree that entry of this Consent Order, without further litigation, is in the public interest and, if fully and appropriately implemented, will facilitate both the District's fulfillment of its affirmative desegregation obligations and the termination of judicial supervision in the area of student assignment related to magnet programs and student transfers.

Relying on the Parties' representations and the expert reports and testimony, the Court finds that this Consent Order is a good faith effort towards desegregation in the stated areas. However, the mere fulfillment of the terms of the Consent Order shall not bind the Court to make a finding of unitary status.  Upon motion by a party at the appropriate time, the Court will make a factual and legal determination as to whether the vestiges of segregation have been eliminated to the extent practicable or whether further relief is necessary.  This reservation by the Court is necessary because the impact of some of the Consent Order's provisions will not be known until they are put into effect, such as the increased encouragement and facilitation of majority-to-minority ("M-to-M") transfers, and because the Court is currently contemplating other relief, such as changes to grade configurations and changes of attendance zone boundaries.[1]   This Court has

---

[1] *Green v. Sch. Bd. of New Kent Cnty*., 391 U.S. 430, 439 (1968) ("[W]hatever plan is adopted will require evaluation in practice, and the court should retain jurisdiction until it is clear that state-imposed segregation has been completely removed.").

reviewed the terms of this Consent Order and concludes that entry of the Consent Order is consistent with the Fourteenth Amendment to the United States Constitution and other applicable federal law, and that such entry will further the orderly desegregation of the District.

Accordingly, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## OVERVIEW AND GENERAL REQUIREMENTS

This Consent Order reflects the District's obligations under Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c *et seq*., to eliminate the vestiges of the prior *de jure* segregation to the extent practicable and to provide educational programs and services without discriminating on the basis of race and in a manner that does not perpetuate or further the racial segregation of students.

The parties agree to the terms of this Consent Order to resolve the Plaintiff Parties' outstanding concerns regarding student assignment related to the creation and implementation of a magnet program in the St. Martinville Zone and District-wide student transfers.  The parties anticipate that full compliance with this Consent Order will help support a finding that the District has complied with both the letter and spirit of the orders governing student assignment, and that the vestiges of past discrimination in the area of student assignment related to the magnet program and student transfers have been eliminated to the extent practicable.  *See Freeman v. Pitts*, 503 U.S. 467, 485 (1992).

This Consent Order shall at all times be binding upon the St. Martin Parish School Board, including all successors of the current Board however constituted.


## PROCEDURAL HISTORY

In August 17, 1965, Plaintiffs sued the District, alleging that the District operated a racially segregated school district in violation of the Fourteenth Amendment to the United States

Constitution.  *Thomas v. St. Martin Parish Sch. Bd.*, 245 F. Supp. 601, 601 (W.D. La. Sept. 2, 1965).  On May 28, 1969, the United States Court of Appeals for the Fifth Circuit, following the Supreme Court's decision in *Green v. School Board of New Kent County*, 391 U.S. 430 (1968), invalidated the District's "freedom of choice" desegregation plan in *Hall v. St. Helena School Board*, 417 F.2d 801 (5th Cir. 1969).

On August 8, 1969, the Court approved the District's new desegregation plan as modified (the "1969 Desegregation Decree"), which, *inter alia*, authorized majority-to-minority ("M-to-M") transfers and established five neighborhood-based attendance zones – St. Martinville, Parks, Breaux Bridge, Cecilia, and Catahoula.  ECF No. 25-3 at 20-24.  *See* ECF No. 25-3 at 9, 12; ECF No. 25-4 at 45-46.  On December 20, 1974, the Court entered a decree purporting to dissolve the 1969 Desegregation Decree (the "1974 Desegregation Decree").  *See* ECF No. 25-10 at 2-4.  On April 20, 2010, this Court issued a Minute Entry stating that "it appeared that the Court had been divested of jurisdiction on December 21, 1976" and "invited the parties to oppose this reading of the Docket."  Mem. Order, *Thomas v. St. Martin Parish Sch. Bd.*, No. 65-11314, ECF No. 58 at 3 (W.D. La. July 12, 2012).

After briefing by the parties, on July 12, 2012, the Court held that this case remained open because the 1974 Desegregation Decree had not dissolved the 1969 Desegregation Decree or terminated the case.  Mem. Order, *Thomas v. St. Martin Parish Sch. Bd.*, No. 65-11314, ECF No. 58 at 31 (W.D. La. July 12, 2012).  On June 24, 2014, the Court of Appeals for the Fifth Circuit affirmed the District Court's July 12, 2012 decision.  *Thomas v. Sch. Bd. St. Martin Parish*, 756 F.3d 380, 387 (5th Cir. 2014).

Following negotiations, the Court entered a consent order regarding facilities, faculty assignment, and staff assignment on December 28, 2015.  After a January 2016 hearing where the

4

parties presented evidence in the form of testimony and expert reports, the Court entered consent orders governing student assignment on January 21, 2016, quality of education on February 3, 2016, and transportation on February 4, 2016.  The Court later consolidated the aforementioned consent orders into a Superseding Consent Order, ECF No. 211, and its attachments, ECF Nos. 211-1 to 211-4, (collectively, the "2016 Order") designating the 2016 Order as the only consent order in full force and effect at this time.

On January 18, 2021, the District filed a Motion for Unitary Status in the areas of student assignment and quality of education, including discipline, course assignment, retention and graduation rates, ECF No. 365, and a Memorandum in Support thereof, ECF No. 365-1 ("Memorandum").  The Plaintiff Parties filed oppositions to the District's Motion and sought further relief in each of the areas.

On June 21, 2021, this Court issued a Memorandum Ruling denying the District's Motion for Unitary Status and Dismissal with respect to student assignment, faculty assignment, student discipline and quality of education related to the Graduation Pathways Program.  The Court granted the District's Motion concerning quality of education with respect to in-grade retention and graduation rates.  The Court granted Plaintiffs' Motion for Further Relief with respect to student assignment, faculty assignment, student discipline and quality of education related to the Graduation Pathways Program. Among other things, the Court ordered Plaintiffs, the United States, and the Board to "develop a revised consent order [relative to student assignment] taking into account Plaintiffs' proposed remedies" identified in said Memorandum Ruling and in Plaintiffs' Proposed Findings of Fact and Conclusions of Law.[2]

---

[2] *See* Memorandum Ruling, Record Document 419 at pp. 70, 158.

On September 2, 2021, the District filed an appeal with the Fifth Circuit. On December, 28, 2021, the District filed a Motion to Stay Further Proceedings Pending Appeal (ECF No. 445). The parties continued to work on the proposed remedial orders through early February.  On February 8, 2022, the District directed its counsel to suspend negotiations of all remedial actions and voted "not to authorize counsel to enter into any consent orders."  ECF Nos. 466 at 1 and 466-1 at 2.  This Court denied the District's stay motion on March 21, 2022 and a hearing on remedial relief was set for August 8, 2022.

The Court held a 5-day evidentiary hearing on remedial relief from August 8-12, 2022 regarding the remaining areas of operation, including student assignment. However, on August 11, 2022, the Fifth Circuit published its opinion, affirming in part (the Court's decision that the District was not unitary) and reversing in part (the Court's decision to close Catahoula Elementary). *Borel on behalf of AL v. Sch. Bd. Saint Martin Par.*, 44 F.4th 307 (5th Cir. 2022).[3] A scheduling order was issued on October 12, 2022, setting a non-jury trial for February 27, 2023.

On December 14, 2022, the Fifth Circuit denied the District's request for rehearing en banc.

On January 6, 2023, the District submitted its proposed student assignment plan to the Court. On February 15, 2023, the Plaintiff Parties submitted their proposed student assignment plans to the Court.  The Parties participated in a hearing to address the student assignment issue from February 28, 2023 to March 6, 2023.

# I. AGREED REMEDIAL MEASURES REGARDING ST. MARTINVILLE ZONE MAGNET PROGRAM

---

[3] On September 26, 2022, the District submitted a Petition for Rehearing En Banc to the Fifth Circuit.  The Petition was denied on December 14, 2022.

During the 2023-2024 school year, the District shall take the specific steps set forth below to develop a whole school magnet school plan for the Early Learning Center ("ELC") and St. Martinville Primary ("SMP") with the goals of providing an enhanced educational magnet program to the students attending the school and attracting white students to M-to-M with the goal of meeting the +/-15% desegregation standard at ELC and SMP.[4]  The +/-15% desegregation standard is a goal to be achieved to the extent practicable and is not a prerequisite to achieving unitary status nor does attaining the goal alone demonstrate an entitlement to unitary status.  The District shall fully and faithfully implement the magnet school plan by, inter alia, opening a robust full school magnet program at ELC and SMP at the beginning of the 2024-2025 school year.

A.    <u>Planning</u>: The District shall engage in the following steps in the planning stage for the magnet program:

i.    <u>Magnet Coordinator ("Theme Coach")</u>: By August 1, 2023, the Board shall hire a "Magnet Coordinator" whose sole function will be dedicated to this stated role and any other magnet-related tasks that may be provided in a position description for a magnet coordinator. The Magnet Coordinator will be an instructional leader who works with each magnet school's principal, academic teachers, and, where necessary, other District-level staff to collaboratively develop lesson plans that integrate the magnet theme into traditional academic instruction. The Magnet Coordinator shall be the leader of the Leadership Team as described elsewhere in this order.  Within twenty (20) days of this order, the

---

[4] Those white students currently eligible to M-to-M to ELC and SMP would be those residentially zoned to Parks Primary, Cecilia Primary, and Teche Elementary; however, the eligibility for an M-to-M to ELC or SMP may vary depending on the K-5 racial ratios on April 1 each year in the Parks, Cecilia, and Breaux Bridge attendance zones.

District shall create a position description for this role that includes qualifications and duties, and shall provide it to the Plaintiff Parties for consideration before posting, recruiting, and hiring. The District shall consider in good faith reasonable suggestions from Plaintiff Parties as to the job qualifications and duties for the magnet coordinator role however, the District is not required to accept such suggestions.

ii.     Following interviews and selection of the most qualified candidate, but prior to extending an offer of employment, the District will share the curriculum vitae and qualifications of the top three candidates with the Plaintiff Parties. Plaintiff Parties may submit feedback about the candidates within two (2) days of receipt of the candidates' information. The District will review any feedback from Plaintiff Parties prior to extending an offer of employment, but the District is not obligated to accept or rely on such feedback in making its selection. Upon request of either of the Plaintiff Parties, the District will explain in writing its rationale supporting its choice to fill the position. The District's Supervisor of Elementary Education shall temporarily assume the tasks of the Magnet Coordinator with the assistance of the Chief Desegregation Implementation Officer ("CDIO").

iii.    <u>Leadership Team, Focus Groups, and Public Input</u>: The District will constitute a racially diverse "Leadership Team" consisting of the District's Magnet Coordinator, CDIO, Director of Instruction and Curriculum, and Elementary Supervisor, as well as a racially diverse group of administrators from ELC, SMP, Parks Primary, Cecilia Primary, and Teche Elementary.

8

The Leadership Team will recruit a racially diverse group of faculty, staff, and parents/guardians, including representatives from each of the stated schools (provided that parents/guardians of the schools may be available to voluntarily participate), to participate in Focus Groups, which shall meet at least three (3) times prior to issuance of the final magnet school plan on November 1, 2023. The District shall select Focus Group members and identify Focus Group dates no later than sixty (60) days after the entry of this Consent Order.

1. No later than one (1) week prior to each Focus Group meeting, the Leadership Team will provide a current draft magnet school plan to the Focus Group and will distribute the draft magnet school plan to the public by posting on the District's website, making copies available for pickup at locations around the District (e.g., libraries, District buildings), and via other appropriate methods of communicating with the public (e.g., text, phone, email, television, radio, flyers, etc.) clearly identifying that the published document is a DRAFT ONLY and not to be considered as a final plan. The notice regarding any draft magnet school plans will include instructions for submitting feedback, as described below, and will note that any written feedback will be considered by the Leadership Team.

2. The District will hold at least two (2) public information sessions prior to September 1, 2023 to review the contents of the draft magnet school plan, provide copies of the plan, and share information about how public

stakeholders can submit input on the plan. The District will notify Plaintiffs Parties of the date for each session at least three (3) weeks prior to the session. The District will begin advertising each session at least two (2) weeks prior to the session via the District's website, text, phone, email, JCalls, television, radio, flyers, and other appropriate means of communication.

3.  The Leadership Team will use the discussion points and protocols approved by the District and Plaintiff Parties to obtain feedback and other input (including, but not limited to, input from the Focus Groups) about an appropriate magnet theme and the process for magnet implementation that will address the stated goals and to provide any other input related to such.

4.  The results of the Focus Groups' discussions and a report of the Leadership Team will be shared with Plaintiff Parties no later than two (2) weeks after each Focus Group.

5.  Public Input: In addition to the Focus Group members, the District will also allow any public stakeholder to submit input regarding any of the draft plans by submission of written comments via the following: (1) a portal for such specific purpose on the District's website; (2) an email address for such specific purpose; and (3) hand-delivery to the ELC Principal's Office, the SMP Principal's Office, or the Central Office. The Principals shall be responsible for forwarding all written comments received from the public to the CDIO, and the CDIO shall be responsible

for forwarding all written comments received from the website portal, the email, and the Principals to the Leadership Committee for discussion and consideration.

**B.**   <u>Development of a Magnet School Plan</u>: The Leadership Team, under the direction of the Magnet Coordinator, shall complete a detailed magnet school plan. The District and the Leadership Team shall collaborate in good faith with Plaintiff Parties to develop the magnet school plan. The Parties' collaboration shall include, but is not limited to, conferring with Plaintiff Parties and their experts at least one (1) time per month prior to September 1, 2023 and at least two (2) times per month after September 1, 2023, and prior to November 1, 2023 and regularly sharing drafts of the magnet school plan.

i.   During these meetings, the Plaintiff Parties will share feedback on the draft magnet plan and the Parties will confer on edits to the draft magnet school plan. The District shall consider in good faith suggestions from Plaintiff Parties for the magnet school plan;

ii.   During these meetings, the Parties will confer about the District's progress on the following benchmarks, which are described throughout this Order. If the District has not demonstrated progress on a benchmark by the proscribed deadline the Plaintiff Parties may seek relief from the Court.

1. The District shall select Focus Group members and identify Focus Group dates no later than sixty (60) days after the entry of this Consent Order.

2. The District shall distribute a draft magnet school plan to the public and to Focus Group members one (1) week prior to each Focus Group meeting.

3. The District will develop an initial marketing plan that includes, but is not limited to, plans for community outreach and to solicit feedback on the magnet school plan and theme to begin no later than June 1, 2023. The District will begin marketing and advertising for the magnet, as appropriate, prior to the final court approval of the magnet school plan.

4. The District shall make a good faith effort to select administrative staff (i.e., principal and assistant principal, if applicable) for the magnet schools by October 1, 2023 and incorporate such staff into the magnet school's planning, marketing, student and faculty recruitment, and implementation.

iii. The Leadership Team will ensure that the magnet school plan does the following:

1. Meets state academic and other educational requirements;

2. Articulates and incorporates a consistent magnet school mission and vision that transitions from ELC to SMP;

3. Clearly defines its theme, includes theme integration throughout the magnet school plan, and describes how the plan will be embedded in all aspects of the magnet schools, including all courses to the extent practicable and possible under curriculum requirements,

school building aesthetics, school culture, behavioral programs, and core magnet components;

4.      Ensures that all students attending ELC and SMP are guaranteed automatic admission to the whole school magnet program;

5.      Does not require special academic admission criteria to be enrolled in the magnet program;

6.      Allows a transfer into the program at any grade-level unless such is not permitted by the selected magnet theme (i.e., Montessori or other programs requiring maintenance of continued attendance for success); and

7.      Provides transportation to all students who M-to-M to ELC and SMP.

iv.      The magnet school plan must provide, at a minimum, the following:

1.      A mission statement and vision;

2.      Key components, including, but not limited to,

a.   plans for ensuring that the magnet theme is unique to SMP and ELC and cannot be replicated by any other school in the District serving same age students, including by requiring the Leadership Team to annually document all offerings that are relevant to or potentially duplicative of the magnet theme and that are offered by other District schools serving same age students;

13

b.  developing a single, unified, and innovative magnet theme (*e.g.*, a STEAM theme, rather than multiple themes) developed with the goal of attracting racially diverse students and developing, for each class offered at SMP and ELC, theme-based curricular units to the extent practicable. When developing the theme-based curricular units, the Leadership Team will pursue the following goals: fulfilling state standards, fostering equitable student outcomes by reflecting the experiences of diverse students, and creating opportunities for experiential learning;

c.  describing expectations, to be developed by the Leadership Team in collaboration with the Plaintiff Parties, for diverse and theme-based culturally responsive instruction, school culture programming, behavioral programming, extracurricular programming, and facilities changes;

d.  monitoring and preventing racial isolation in classrooms and/or tracking within schools/classes; articulating the theme in the magnet schools' curricular and extracurricular programs; recruiting M-to-M students;

14

    e.   engaging existing SMP/ELC students and families during development and implementation of the magnet school plan;

    f.   attempting to identify and engage voluntary partners (e.g., businesses and universities) relevant to the magnet theme; and

    g.   recruiting and hiring teachers and staff for the magnet school;

3.    Action plan and timeline for ensuring that SMP and ELC have the facilities, financial and material resources, and trained faculty and staff needed to open a robust and unique magnet school in fall 2024, and maintain that magnet school thereafter with specific steps through the 2025-2026 school year;

4.    Marketing plan that includes, but is not limited to, plans for community outreach and solicitation of feedback on the magnet school plan and theme to begin no later than June 1, 2023; a centralized approach overseen by District administrator(s) to advertising the programs offered at the magnet school prior to its opening in fall 2024, including beginning marketing and advertising for the magnet, as appropriate, prior to the final court approval of the magnet school plan; advertising the administrators and faculty who have been confirmed to teach at the magnet schools; distribution of information about the application process;

15

recruitment of community partners to help in sharing information as well as outreach to local media outlets; a magnet school website; a marketing video; and consideration of and utilizing other forms of advertising that may be available at a reasonable cost;

5.   Comprehensive goals, including, for example, specific criteria, timelines, and deadlines for incremental annual desegregation goals for the school; expanding the magnet school to include additional programs or middle school grades; and assessing the theme's implementation;

6.   A whole school magnet program that ensures all students at SMP and ELC have an equal opportunity to fully partake in the special magnet curriculum without admissions criteria to decrease the likelihood of tracking or racial isolation within the schools ensures the comprehensive integration of the magnet theme into the curriculum as may be reasonable under state academic requirements, and ensures that all students enrolled in the school may participate in the unified magnet theme;[5]

7.   Implementation protocol, including a monitoring protocol and program evaluation protocol that includes, but is not limited to, tracking of magnet applicants, acceptances, and enrollment; progress towards or regress from desegregation goals; number and

---

[5] For example, with regards to theme-based electives, every student enrolled in the magnet school will be placed in specialized classes related to the unified magnet theme (e.g., STEM, art class, dance class, etc.). While sufficient specialized classes will be provided to accommodate all students enrolled in the magnet school, capacity in each type of class (e.g., art class) may be less than the entire school population.

examples of theme-based curricular units; number and frequency of theme-based professional development opportunities; outreach efforts; family, student, and educator satisfaction as information may be available;

8.  Professional development training for principals, teachers, and other staff at the SMP and ELC magnet school, including annual trainings on the magnet theme and theme development through curriculum and instruction; building a culturally-responsive curriculum that represents racially diverse students; building relationships and communicating with racially diverse families and/or families from communities staff have not served before; supporting racially diverse students, including through asset-based instruction and building inclusive school environments; responding to and intervening in racism and harassment; ensuring equal access to the magnet schools' programs and resources; assessing progress toward academic and magnet school plan goals; and engaging in team-building with other educators working on implementing the magnet theme. The District shall provide the SMP and ELC faculties and staff a total of at least 16 hours of training, such training to address these identified subjects, prior to the start of the 2024-2025 school year and a total of at least 8 hours of training annually thereafter; and

9.      Anticipated estimated program costs and potential funding sources, including District funds.

10.     <u>Submission and Approval</u>**:** On or before October 1, 2023, the District will submit a proposed "final" magnet school plan to Plaintiff Parties for review and comments. The Parties will work cooperatively to resolve any concerns raised by Plaintiff Parties before the District submits the final magnet school plan to the Court. On or before November 1, 2023, the District shall file a final magnet school plan with the Court, requesting approval and indicating the consent or other position of the Plaintiff Parties. If necessary, Plaintiff Parties shall file with the Court any alternative plans and/or objections to the District's magnet school plan by November 15, 2023. The Court shall attempt to resolve any dispute by ruling on the papers without live testimony by December 31, 2023.

**C.**    <u>Implementation of the Magnet Program</u>:  Upon approval of the magnet school plan by the Court, the District will take the following steps to implement the magnet school plan.

i.     <u>Funding</u>: The District shall provide sustainable funding for the magnet program and, as available and appropriate, will utilize the grant process to seek funding. If the District is unable to secure grant funding, funding will be secured from the District's General Funds.

ii.     <u>Marketing</u>:  The District shall take the following steps to encourage students from Parks Primary, Cecilia Primary, Teche Elementary, and other eligible M-to-M schools to choose to M-to-M transfer to ELC and SMP:

1.     Once in November, January, and March of each year, the District shall publish in the Teche News an advertisement which includes information concerning the magnet program and transfer options for students;

2.     Beginning in 2024, and each January thereafter, the District shall provide a specific description of the magnet program, including, how to apply, the open house schedule, and the field trip schedule by packets sent home with non-Black preK-4 students to parents at Parks Primary, Cecilia Primary, Teche Elementary, and other eligible M-to-M schools;

3.     Beginning in 2024, and each February thereafter, the District agrees to hold at least one (1) open house at SMP and ELC for potential M-to-M students as well as one (1) visit from SMP/ELC leaders to Parks, Cecilia, Teche, and other eligible M-to-M schools to talk to families and students about the magnet school. The District shall send J-Call reminders to parents of non-Black preK-4 students at Parks Primary, Cecilia Primary, Teche Elementary, and other eligible M-to-M schools at least one (1) week prior to holding an open house at ELC and at SMP , at which open houses parents and students will be provided the opportunity to visit the school

campuses and classrooms, meet teachers and administrators, and receive a specific description of the magnet program, including how to apply; and

4.  The District shall develop and produce a flyer or brochure which includes a detailed description of the magnet program, including how to apply, a hardcopy of the application, and transfer options for students. The District shall make copies of such available at the public libraries, city halls, and community centers (as available) in the Parks and Cecilia communities and the communities that house other eligible M-to-M schools and at the school offices at Parks Primary, Cecilia Primary, Teche Elementary, and other eligible M-to-M schools.

iii.  <u>Supplies, Equipment, Other Materials</u>: The District shall provide, as required by the selected program and as stated in the magnet school plan, all supplies, equipment, textbooks, and other materials for use by students, teachers, and administrators.

iv.  <u>Faculty and Administrative Staff</u>:

1.  The District shall constitute the faculty and administrative staff, including the principal and assistant principal, as applicable, at ELC and SMP with the goal of providing, to the extent practicable, school faculty and staff members who express commitment to the theme and success of the magnet program, who agree to complete

20

necessary training for the magnet program, who are highly qualified and certified, and who are racially diverse.

2.     For purposes of this assignment of faculty at ELC and SMP for the beginning of school year 2024-2025, the District shall strive to reach the desegregation goals established in the Court's order regarding faculty assignment; however, reaching this goal is not a prerequisite for the District to achieving unitary status in student assignment.

3.     To accomplish this, the District shall follow the faculty assignment procedures described below. All interested teachers and administrators must submit an application and go through the employment process. The constitution of faculty must be accomplished by March 1, 2024.

4.     Any teacher or administrator assigned to ELC or SMP as of school year 2023-2024 who is not selected for assignment to the schools for school year 2024-2025 when the magnet program is to be implemented will not be terminated by the District but may be reassigned, as positions may be available and determined by the Administration to be appropriate, if the employee desires to continue employment.

v.   Teachers and staff play a vital role in enhancing the attractiveness of a school to prospective students and their families. Therefore, the District shall make every effort to recruit high quality, well-qualified faculty and staff to the magnet school. Within ninety (90) days of this order, the

District shall create position descriptions for the magnet's administrative staff (principal and assistant principal, as applicable) that include qualifications and duties, and shall provide them to the Plaintiff Parties for consideration before posting, recruiting, and hiring. Any comments by Plaintiff Parties must be provided to the District within ten (10) days of receipt of the position descriptions. The District shall consider in good faith suggestions from Plaintiff Parties as to the job qualifications and duties; however, the District is not required to accept such suggestions.

1.  Following interviews and selection of the most qualified candidate, but prior to extending an offer of employment, the District will share the curriculum vitae and qualifications of the top three candidates for magnet administrative staff (principal and assistant principal, as applicable) with the Plaintiff Parties. Plaintiff Parties may submit feedback about the candidates within two (2) days of receipt of the candidates' information. The District will review any feedback from Plaintiff Parties prior to extending an offer of employment, but the District is not obligated to accept or rely on such feedback in making its selection. Upon request of either of the Plaintiff Parties, the District will explain in writing its rationale supporting its choice to fill the position. The District shall make a good faith effort to select administrative staff for the magnet school by October 1, 2023 and incorporate such staff into the magnet school's planning, marketing,

22

student and faculty recruitment, and implementation. On or before March 1, 2024, the District will provide a report to Plaintiff Parties that includes the following information:

a.      The name, race, certification status of each current teacher and administrator at ELC and SMP;

b.      The name, race, certification status of each applicant for the magnet program teachers and administrative staff; and

c.      The name, race, certification status of each teacher and administrative staff selected for the magnet program.

vi.      <u>Training</u>:   The District shall provide pre-implementation training to principals, teachers and staff, as required by the selected program theme and as stated in the magnet school plan described above.

vii.      <u>Monitoring and Assessment</u>: The Monitoring Team will be comprised of the Supervisor of Elementary Education and/or the Magnet Coordinator who may be subsequently retained, along with the CDIO and Director of Curriculum and Instruction. The Monitoring Team will monitor each school, ELC and SMP, on a monthly basis using a protocol in the magnet school plan developed with established criteria for fidelity of implementation of the agreed upon magnet theme and the goals in the magnet school plan. The Monitoring Team members will come together bi-monthly (every two months) to disaggregate the data on fidelity of implementation and identify themes and trends that appear in the data in terms of strengths and areas of concern with the implementation process.

The Monitoring Team will also recruit a group of racially diverse teachers, staff, and parents/guardians from ELC and SMP to participate in a "monitoring focus group" about the magnet schools two (2) times a year. The Supervisor of Elementary Education and/or any Magnet Coordinator will then meet individually with each schools' administrators and their leadership team members to debrief on the results of the monitoring protocol, data themes and trends, compliance with the magnet school plan, feedback from the monitoring focus group.  A plan of action will be developed at this time as may be deemed necessary by the Monitoring Team, to address any areas of concern by an agreed upon date. At the end of each year, a program evaluation developed or selected from a previously designed measure will be conducted to determine the effectiveness of the program in reaching the goal of attracting white students to both ELC and SMP magnet programs.

viii.   Transportation: The District shall provide all students enrolled in SMP, ELC with free transportation to and from school; and to and/or from after-school extracurricular activities that may be offered after-school.[6] The District has applied for a MSAP grant which, if awarded, will provide funding for after-school tutoring at ELC and/or SMP and for transportation of students home following such after-school activity; therefore, if the

---

[6] For students who attend SMP and ELC via a majority-to-minority transfer, the District may provide extracurricular activity transportation through the use of satellite drop-offs at or near their attendance zone school.

MSAP grant is awarded, the District will   provide such funded transportation.

ix.     <u>Survey and Response</u>: In consultation with Plaintiff Parties, the District shall annually survey faculty, staff, and parents/guardians of children at the magnet program regarding the effectiveness of the magnet program, suggestions for improving the magnet program, and other relevant considerations and share the surveys and results with Plaintiff Parties. Beginning in 2024, on or before July 1 of each year, the District shall develop and file with the Court a plan of action to address the results of the survey, including and especially any concerns about disparate treatment of Black families or faculty, by an agreed upon date.

## D.     MONITORING, REPORTING AND OVERSIGHT

The District is ordered to prepare and file bi-monthly (every two months) status reports with the Court between the date of this order and September 2024. The District's status reports will indicate whether the District has met all of the timelines and deadlines described above and in its magnet school plan. With respect to the implementation of the magnet school, the bi-monthly status reports will, include at the very least, a detailed description of all benchmarks reached to date.

The District's bi-monthly status reports will also include a list of all steps or actions taken by the District since the last report to comply with the Court's student assignment order and the magnet school plan. If the District reports any missed deadline or delay, the District shall detail what steps it took to avoid the delay and what actions it has taken in response to the delay.  If the delays affect the Fall 2024 opening of the magnet school in any way, the Court may consider

ordering the District to show cause why it cannot adopt an accelerated schedule to remedy the delays.

The District's bi-monthly reports shall begin on the 1st Friday of the first month that falls at most two (2) months following the entry of this order. The District's bi-monthly reports will be due on or before the 1st Friday of every second month thereafter through and including the second month following the implementation of the magnet program for school year 2024-2025. The Plaintiff Parties may file a response to the District's bi-monthly reports, alerting the Court to areas of disagreement or non-compliance, and if necessary move for further relief. The parties will meet and confer to attempt to resolve any areas of disagreement before Plaintiff Parties file such a motion for further relief.

E.     OBJECTIONS

The Parties will work cooperatively to resolve any concerns raised by Plaintiff Parties before the District submits the final magnet school plan to the Court. On or before November 1, 2023, the District shall file a final magnet school plan with the Court, requesting approval and indicating the consent or other position of the Plaintiff Parties. If necessary, Plaintiff Parties shall file with the Court any alternative plans and/or objections to the District's magnet school plan by November 15, 2023. The Court shall attempt to resolve any dispute by ruling on the papers without live testimony by December 31, 2023.

II.    AGREED REMEDIAL MEASURES REGARDING DISTRICTWIDE M-TO-M TRANSFERS

A.   Definition: A Majority-to-Minority or "M-to-M" transfer shall be available to any student in kindergarten through 12th grade zoned to a school where the student's race, as specified in the District's student information system, is in the majority to

allow a transfer to another school in the District where the student's race is in the minority.

B. <u>Goal</u>: Although the District shall employ the M-to-M transfer program to enhance desegregation at all schools, the District shall focus additional efforts and resources to advance the M-to-M program and achieve and maintain desegregation in the elementary schools in the St. Martinville attendance zone, i.e., SMP, ELC, and Catahoula. Nevertheless, the District shall, in accordance with section A above, not discourage/deny any M-to-M transfer request regardless of whether those transfers would directly or indirectly affect the targeted elementary schools.

C. <u>Application Period</u>:  The application period for all M-to-M transfers will open on the first school day of the spring semester and close at 4:30 p.m. on May 1 preceding the school year for which the M-to-M transfer would first be applicable (*e.g.*, applications for M-to-M transfers that would be effective as of the 2023-2024 school year would be due by the close of business on May 1, 2023).  If May 1 falls on a Saturday or Sunday, the application period will close at 4:30 p.m. on the following Monday.

D. <u>Valid Applications to Be Granted</u>:  A student whose race is in the majority at the grade-appropriate school in his/her zone of residence will have a valid M-to-M transfer request if he/she requests to be transferred to a grade-appropriate school where his/her race is in the minority. For the purpose of this determination, the racial ratios for all schools shall be those as of May 1 preceding the year in which the transfer would begin. Any student who meets this criterion and submits a timely

27

application shall be granted an M-to-M transfer. Furthermore, the District shall not require that applications for the M-to-M or magnet program transfers be notarized.

E. <u>Reapplications</u>: A student granted an M-to-M transfer need not reapply each year and shall continue attendance in the receiving zone until the student completes the highest grade at the zone in which the initial M-to-M transfer school is located.[7]

F. <u>Receiving School Becomes Home School</u>: The receiving school shall become the home school for all purposes for the M-to-M transfer student until the student opts out of the program.  This means the M-to-M student cannot be removed from the receiving school for any reason except on a parent's request to withdraw the M-to-M transfer at the close of the school year. Any student granted an M-to-M transfer shall be immediately eligible for athletic participation at the receiving school notwithstanding any state association or other rule on residency or transfer to the contrary. The District will communicate this information to parents using the methods set forth herein.

G. <u>Transportation Provided</u>: The District shall provide all students granted M-to-M transfers with free transportation to and from school. To the extent the District provides any student with free transportation to and/or from events held outside of regular school hours (*e.g.*, after-school extracurricular activities), the District shall extend the same free transportation to students granted M-to-M transfers. The District will communicate this information to parents using the methods set forth herein.

---

[7] If an M-to-M student begins attending a receiving school in which their race is in the minority and, in the course of their attendance, the M-to-M student's race becomes a majority due to demographic changes, rezoning, or other factors, such M-to-M student shall continue attendance in the receiving school zone until the student completes the highest grade in the receiving school zone.

H. <u>Capacity</u>:  The District shall ensure that a space is made available at the receiving school, and the lack of capacity shall not be justification for denying any M-to-M request.  The District will communicate this information to parents using the methods set forth herein.

I. <u>Marketing</u>: The District shall publicize the M-to-M program by providing detailed information concerning the application period and process, the provision of free transportation, and contact information for additional assistance to students and parents/guardians by the following means:

 i. No later than November 15 of each school year, the District will broadly disseminate and publicize information about M-to-M transfers for the following school year through at least two media sources (*e.g.*, notices sent home with students, J-Calls, emails, etc.);

 ii. At least one (1) time during the first and third weeks of the months of January, February, and March and at least one (1) time  each week during the month of April, the District will provide the M-to-M program information to parents/guardians who have students eligible to participate in the M-to-M program through at least two media sources (*e.g.*, notices sent home with students, J-Calls, emails, etc.). In communicating with parents/guardians, the District will include efforts designed to reach parents/guardians who face barriers to receiving information, including lack of digital access;

 iii.  The District shall maintain a posting on the Board's website and a portal where students and parents/guardians can access (1) the policies and

procedures governing the M-to-M program; (2) a detailed explanation of the application process and timeline; (3) information describing the specialized programs (e.g., magnet, dual language, etc.) available at each school; (4) information describing the enrollment demographics of each school; (5) information regarding transportation, including the projected pick-up and drop-off points; (6) an on-line application; and (7) the contact information, including phone number and email, for a District representative responsible for providing parents/guardians with additional information and assistance regarding the M-to-M program;

iv.   The District shall provide notices of the M-to-M program to each schools' parent-teacher associations, if one, at each of the meetings of that group; and will make the notices available at every schools' office.

v.   The District shall publish an M-to-M informational notice in the Teche News once in November and once in February each year;

vi.   Within two weeks of the beginning of the spring semester each year, the District shall hold meetings at each high school open to all students and parents/guardians who are interested in the M-to-M program, such meetings to be held in the evenings, weekends, or other time convenient for parental/guardian involvement, during which the District will discuss the benefits of the M-to-M program, provide the attendees with a detailed description of the M-to-M program and provide all attendees with M-to-M applications; and

vii.  Within two weeks of the beginning of the spring semester each year, the District shall hold parent/guardian meetings at Teche Elementary School, Cecilia Primary School, and Parks Primary School in the evenings, weekends, or other time convenient for parental involvement, during which the District shall provide a detailed description of the ELC and SMP magnet program and the M-to-M program , and shall provide all attendees with M-to-M applications. The District shall offer similar information sessions and meetings at SMP, ELC, and Breaux Bridge Primary and Elementary schools for families to learn about M-to-M opportunities.

## II.     MODIFICATIONS

Until such time that the District is declared unitary as to student assignment and this case is dismissed as to student assignment, the District must obtain the Court's approval of any and all modifications to the magnet programs and student transfer policies.

## III.    TERMINATION OF JUDICIAL SUPERVISION

The parties agree that full compliance with the foregoing Consent Order will support a finding that the District has complied with both the letter and the spirit of the orders governing this matter as they pertain to student assignment and that the vestiges of segregation in the area of student assignment have been eliminated to the extent practicable.[8]  This Consent Order "will require evaluation in practice, and the court should retain jurisdiction until it is clear that state-imposed segregation has been completely removed." *Green v. Sch. Bd. of New Kent Cnty.*, 391 U.S. 430, 439 (1968). Forty-five (45) calendar days from the conclusion of the 2025-2026 school year, the District may move for unitary status and dismissal on the magnet school and student

---

[8]      *See Freeman*, 503 U.S. at 485.

transfer aspects of student assignment and/or the Plaintiffs Parties may move for further relief or to enforce this Consent Order.  The applicable provisions of the Federal Rules of Civil Procedure and the Local Rules of this Court will apply to any such motions.  In the absence of a motion in opposition to unitary status, a motion to enforce the Consent Order, or a motion for further relief by the Plaintiff Parties, and subject to this Court's ruling that the District is in compliance with this Consent Order, Title IV of the Civil Rights Act of 1964, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Court may declare the District unitary with respect to student assignment and dismiss this case as to student assignment.

IV.    **EFFECT OF PRIOR ORDERS**

All prior orders not inconsistent herewith remain in full force and effect.

**HEREBY ORDERED, ADJUDGED, AND DECREED**, this the ___9th__ day of _____June_____, 2023.

_____
**UNITED STATES DISTRICT JUDGE**

32

**APPROVED REGARDING FORM AND CONTENT:**

**For Plaintiffs:**

/s/ Deuel Ross
Deuel Ross
Kevin E. Jason
Katrina Feldkamp
Victor Jones
R. Gary Spencer
Joseph Wong
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
99 Hudson Street, 16th Fl.
New York, NY 10013
(212) 965-2200
(212) 226-7592 Fax

/s/ Gideon T. Carter, III
Gideon T. Carter, III
Bar Roll Number 14136
Post Office Box 80264
Baton Rouge, LA 70898-0264
(225) 214-1546
(225) 926-2299 Fax
gideon.carter@lawyer4u.com

**For Plaintiff-Intervenor, UNITED STATES OF AMERICA**

KRISTEN CLARKE
Assistant Attorney General

/s/ Christopher S. Awad
SHAHEENA A. SIMONS
FRANZ R. MARSHALL
CHRISTOPHER S. AWAD
MEGAN ABBOT
Educational Opportunities Section
U.S. Dept. of Justice, Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

BRANDON BONAPARTE BROWN
United States Attorney
For the Western District of Louisiana

33

/s/ Allison Reppond
ALLISON REPPOND (TX#24085733)
Assistant United States Attorneys
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318) 676-3614

**For Defendant, ST. MARTIN PARISH SCHOOL BOARD**

**HAMMONDS, SILLS, ADKINSGUICE, NOAH & PERKINS, LLP**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, LA 70808
Telephone (225) 923-3462
Facsimile (225) 923-0315

/s/ *John Blanchard*
**Robert L. Hammonds**
Louisiana Bar No. 6484
**Pamela Wescovich Dill**
Louisiana Bar No. 31703
**John Richard Blanchard**
Louisiana Bar No. 37036
**Timothy J. Riveria**
Louisiana Bar No. 39585