**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **THERESA D. THOMAS, et al.,** | * | |
| *Plaintiffs* | * | |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| *Plaintiff-Intervenor* | * | **CIVIL ACTION NO. 6:65-cv-11314** |
| | * | |
| **vs.** | * | |
| | * | |
| **ST. MARTIN PARISH SCHOOL** | * | **JUDGE ELIZABETH ERNY FOOTE** |
| **BOARD, et al.,** | * | |
| *Defendants* | * | |
| | * | |

**********************************************************************

## CONSENT ORDER REGARDING ATTENDANCE ZONES

1

# INTRODUCTION

Plaintiff Class Representatives Taylor Alexander, Tracie Borel, Genevieve Dartez, and Alainey Smith ("Plaintiffs"), the Plaintiff-Intervenor United States of America ("United States") (collectively, "Plaintiff Parties") and the Defendant St. Martin Parish School Board (the "Board" or "District") (collectively, "the Parties") have entered into this Consent Order Regarding Attendance Zones, which addresses issues regarding the District's fulfillment of its affirmative desegregation obligations in the area of student assignment. The Parties agree, and the Court finds, that entry of this Consent Order, without further litigation concerning student assignment, is in the public interest. The Parties agree, and the Court finds, that this Consent Order—in combination with the Court's order on the reopening of Catahoula Elementary School ("Catahoula")[1] and the Consent Order regarding the St. Martinville Zone Magnet and District-Wide Transfer Program[2]— if fully and appropriately implemented, will facilitate both the District's fulfillment of its affirmative desegregation obligations and the termination of judicial supervision in the area of student assignment related to attendance zones.

Relying on the Parties' representations and the expert reports and testimony, the Court finds that this Consent Order is a good faith effort towards desegregation in student assignment related to attendance zones. However, the mere fulfillment of the terms of the Consent Order shall not bind the Court to make a finding of unitary status: "whatever plan is adopted will require evaluation in practice, and the court should retain jurisdiction until it is clear that state-imposed segregation has been completely removed."[3] Upon motion by a party at the appropriate time, the Court will make a factual and legal determination as to whether the vestiges of segregation have

---

[1] Record Documents 707 and 740.
[2] Record Document 694.
[3] *Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 439 (1968).

2

been eliminated to the extent practicable or whether further relief is necessary. This reservation by the Court is necessary because the impact of some of the Consent Order's provisions will not be known until they are implemented and reviewed subsequent to operation, such as the change of attendance zone boundaries, the ongoing Catahoula issue, and the increased encouragement and facilitation of majority-to-minority ("M-to-M") transfers.

This Court has reviewed the terms of this Consent Order and concludes that it is consistent with the Fourteenth Amendment to the United States Constitution and other applicable federal law, and that its entry and successful implementation will further the orderly desegregation of the District.

Accordingly, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## OVERVIEW AND GENERAL REQUIREMENTS

This Consent Order reflects the District's obligations under Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c *et seq.* and relevant Federal law, to eliminate the vestiges of the prior *de jure* segregation to the extent practicable and to provide educational programs and services without discriminating on the basis of race and in a manner that does not perpetuate or further the racial segregation of students.

The Parties agree to the terms of this Consent Order to resolve the Plaintiff Parties' outstanding concerns regarding student assignment related to attendance zones and District-wide student transfers, except for the outstanding issue of the operation of Catahoula Elementary School and its attendance zones. The Parties anticipate that full and good-faith compliance with this Consent Order, in combination with the Court's separate order(s) regarding Catahoula,[4] will help support a finding that the District has complied with both the letter and spirit of the orders

---

[4] Record Documents 707, 740 and 832 (Minutes of May 24, 2024 Oral Ruling).

governing student assignment, and that the vestiges of past discrimination in the area of student assignment related to attendance zones and student transfers have been eliminated to the extent practicable.[5]

This Consent Order shall at all times be binding upon the St. Martin Parish School Board, including all successors of the current Board however constituted.

## PROCEDURAL HISTORY

In August 17, 1965, Plaintiffs sued the District, alleging that the District operated a racially segregated school district in violation of the Fourteenth Amendment to the United States Constitution.[6] On May 28, 1969, the United States Court of Appeals for the Fifth Circuit, following the Supreme Court's decision in *Green*, 391 U.S. 430 (1968), invalidated the District's "freedom of choice" desegregation plan.[7]

On August 8, 1969, the Court approved the District's new desegregation plan as modified (the "1969 Desegregation Decree"), which, *inter alia*, authorized M-to-M transfers and established five neighborhood-based attendance zones – St. Martinville, Parks, Breaux Bridge, Cecilia, and Catahoula.[8] On December 20, 1974, the Court entered a decree finding that the Board had complied with aspects of the 1969 Desegregation Decree, but retaining jurisdiction over the case for at least another two years (the "1974 Decree").[9] On April 20, 2010, this Court issued a Minute Entry stating that "it appeared that the Court had been divested of jurisdiction on December 21, 1976" and "invited the parties to oppose this reading of the Docket."[10]

---

[5] *See Freeman v. Pitts*, 503 U.S. 467, 485 (1992).
[6] *Thomas v. St. Martin Parish Sch. Bd.*, 245 F. Supp. 601, 601 (W.D. La. Sept. 2, 1965).
[7] *Hall v. St. Helena Parish Sch. Bd.*, 417 F.2d 801 (5th Cir. 1969).
[8] Record Document 25-3 at 20-24. *See* Record Document 25-3 at 9, 12; Record Document 25-4 at 45-46.
[9] *See* Record Document 25-10 at 2-4.
[10] Record Document 58 at 3.

4

After briefing by the Parties, on July 12, 2012, the Court held that this case remained open because the 1974 Desegregation Decree had not dissolved the 1969 Desegregation Decree or terminated the case.[11] On June 24, 2014, the Court of Appeals for the Fifth Circuit affirmed the District Court's July 12, 2012 decision.[12]

Following negotiations, the Court entered a consent order regarding facilities, faculty assignment, and staff assignment on December 28, 2015. After a hearing, where the Parties presented evidence in the form of testimony and expert reports, the Court entered consent orders governing student assignment on January 21, 2016, quality of education on February 3, 2016, and transportation on February 4, 2016. This Court later consolidated the aforementioned consent orders into a Superseding Consent Order[13] (collectively, the "2016 Order") designating the 2016 Order as the only consent order in full force and effect at this time.

On January 18, 2021, the District filed a Motion for Unitary Status in the areas of student assignment and quality of education, including discipline, course assignment, student retention and graduation rates[14] and a Memorandum in Support thereof.[15] The Plaintiff Parties filed oppositions to the District's Motion and sought further relief in each of the areas.

On June 21, 2021, this Court issued a Memorandum Ruling denying the District's Motion for Unitary Status and Dismissal with respect to student assignment, faculty assignment, student discipline, and quality of education related to the Graduation Pathways Program. The Court granted the District's Motion concerning quality of education with respect to in-grade retention and graduation rates. This Court granted Plaintiffs' Motion for Further Relief with respect to

---

[11] Record Document 58 at 31.
[12] *Thomas v. Sch. Bd. St. Martin Parish*, 756 F.3d 380, 387 (5th Cir. 2014).
[13] Record Document 211, 211-1 to 211-4.
[14] Record Document 365.
[15] Record Document 365-1.

student assignment, faculty assignment, student discipline, and quality of education related to the Graduation Pathways Program. Among other things, the Court ordered the Parties to "develop a revised consent order [relative to student assignment] taking into account Plaintiffs' proposed remedies" identified in said Memorandum Ruling and in Plaintiffs' Proposed Findings of Fact and Conclusions of Law.[16]

On September 2, 2021, the District filed an appeal with the Fifth Circuit. On December 28, 2021, the District filed a Motion to Stay Further Proceedings Pending Appeal.[17] The Parties continued to work on the proposed remedial orders through early February. On February 8, 2022, the District directed its counsel to suspend negotiations of all remedial actions and voted "not to authorize counsel to enter into any consent orders."[18] The District then filed a Motion to Stay Pending Appeal with the Fifth Circuit on February 9, 2022.[19] On March 3, 2022, the Fifth Circuit denied the District's request for immediate stay, finding no "need for immediate relief," and carried the stay motion with the case.[20] This Court denied the District's stay motion on March 21, 2022, and a hearing on remedial relief was set for August 8, 2022.

The Court held a 5-day evidentiary hearing on remedial relief from August 8, 2022 - August 12, 2022, regarding the remaining areas of operation, including student assignment. However, on August 11, 2022, the Fifth Circuit published its opinion, affirming in part (this Court's decision that the District was not unitary) and reversing in part (this Court's decision to close Catahoula

---

[16] *See* Record Document 419 at 70, 158.
[17] Record Document 445.
[18] Record Documents 466 at 1 and 466-1 at 2.
[19] Defs.' Mot. for Stay, No. 21-30514 (5th Cir. Feb. 9, 2022).
[20] *Borel on behalf of AL v. Sch. Bd. Saint Martin Par.*, No. 21-30514, 2022 WL 3355807, at *1 (5th Cir. Mar. 3, 2022).

Elementary).[21] A scheduling order was issued on October 12, 2022, setting a non-jury trial for February 27, 2023.

On December 14, 2022, the Fifth Circuit denied the District's request for rehearing en banc of its appeal of this Court's June 2021 Opinion.

On January 6, 2023, the District submitted its proposed student assignment plan to the Court. On February 15, 2023, the Plaintiff Parties submitted their proposed student assignment plans to the Court. The Parties participated in a hearing to address the student assignment issue from February 28, 2023 to March 6, 2023.

On May 26, 2023, this Court entered a remedial order pertaining to faculty assignment and quality of education in the areas of discipline and graduation pathways.

On June 9, 2023, the Parties submitted a joint proposed consent order on the St. Martinville Zone magnet program and transfers. The Court entered that consent order the same day.

On July 31, 2023, this Court ruled on the reopening of Catahoula and permitted the District to reopen Catahoula in Fall 2024 as a prekindergarten, kindergarten, and first grade ("PK-1") school with its pre-2016 school zone lines.[22] Judgment was entered on November 16, 2023.

I.     FACTS

The District's current student assignment plan assigns students by geographically designed attendance zones to a total of sixteen (16) schools, with all except Stephensville in feeder patterns within four (4) attendance zones as follows:

| Breaux Bridge Zone | Parks Zone | St. Martinville Zone | Cecilia Zone |
|---|---|---|---|
| Breaux Bridge High (9-12) | | St. Martinville High (9-12) | Cecilia High (9-12) |
| Breaux Bridge Junior (6-8) | Parks Middle (5-8) | St. Martinville Junior (6-8) | Cecilia Middle (6-8) |

[21] *Borel on behalf of AL v. Sch. Bd. Saint Martin Par.*, 44 F.4th 307 (5th Cir. 2022).
[22] Record Document No. 707.

7

| Breaux Bridge Elem. (3-5) | Parks Primary (PK-4) | St. Martinville Primary (3-5) | Teche Elementary (3-5) |
|---|---|---|---|
| Breaux Bridge Primary (PK-2) | | Early Learning Center (PK-2) | Cecilia Primary (PK-2) |

Stephensville Elementary School serves grades PK-8 with students in grades 9-12 attending Morgan City High School in neighboring St. Mary Parish.

During the 1968-1969 school year, 56% of the students in the District were White, while 44% were Black.[23] That year, all the students, faculty, and staff at Catahoula Elementary were White.[24] Catahoula was a White school during *de jure* segregation before the entry of the 2016 Consent Order.[25] Before the Court ordered Catahoula's closure, it remained racially identifiable White.[26]

Currently, the District serves approximately 7,235 students in grades PK-12, of whom approximately 48.1 % are White and 47% are Black. Pursuant to the District's current Student Transfer and Residency policies, all students must attend school in the attendance zone where they reside unless they qualify for and are granted a valid transfer to another school. The Parties' joint Student Assignment Demographic Summary shows the racial makeup of the student enrollment at each school based on the "actual enrollment" as of the November 15 Report of each school year from the 2015-2016 school year through the 2022-2023 school year.[27] The actual enrollment figures account for all students attending the school, including those students who live in the residential attendance zone and those who have transferred into that school.[28]

---

[23] Record Document 25-3 at 9-11.
[24] Record Document 25-3 at 9, 11-12.
[25] Record Document 25-3 at 14-18; Record Document 150 at 5.
[26] Feb. 2023 Bench Trial Joint Ex. 1 at 3, *see* Record Document 651.
[27] Feb. 2023 Bench Trial Joint Ex. 1, *see* Record Document 651.
[28] *Id.*

8

Based on the 2022-2023 actual enrollment data, the racial makeup of the student enrollments by school and grade level are:

**Table 1: Actual Enrollment as of November 15, 2022**
(Deviations from the +/-15% desegregation standard are highlighted in red)

| School | White | W% | Other | O% | Black | B% | +/- |
|---|---|---|---|---|---|---|---|
| **Elementary (PK-5) Totals** | 1,644 | 46.9% | 200 | 5.7% | 1,660 | 47.4% | - |
| Breaux Bridge Elementary | 125 | 36.8% | 20 | 5.9% | 195 | 57.4% | +10.0% |
| Breaux Bridge Primary | 194 | 35.5% | 26 | 4.8% | 326 | 59.7% | +12.3% |
| Cecilia Primary | 399 | 58.9% | 67 | 9.9% | 211 | 31.2% | -16.2% |
| Parks Primary (PK-4) | 218 | 56.9% | 6 | 1.6% | 159 | 41.5% | -5.9% |
| Early Learning Center (PK-1) | 122 | 32.4% | 13 | 3.5% | 241 | 64.1% | +16.7% |
| St. Martinville Primary | 141 | 29.5% | 15 | 3.1% | 322 | 67.4% | +20.0% |
| Teche Elementary | 329 | 56.3% | 49 | 8.4% | 206 | 35.3% | -12.1% |
| Stephensville Elementary | 116 | 96.7% | 4 | 3.3% | 0 | 0.0% | - |
| | | | | | | | |
| **Middle School (6-8) Totals** | 789 | 48.4% | 66 | 4.1% | 774 | 47.5% | - |
| Breaux Bridge Junior High | 167 | 43.2% | 12 | 3.1% | 208 | 53.7% | +6.2% |
| Cecilia Junior High | 349 | 59.7% | 38 | 6.5% | 198 | 33.8% | -13.7% |
| Parks Middle (5-8) | 140 | 47.3% | 3 | 1.0% | 153 | 51.7% | +4.2% |
| St. Martinville Junior High | 133 | 36.8% | 13 | 3.6% | 215 | 59.6% | +12.1% |
| | | | | | | | |
| **High School (9-12) Totals** | 1,046 | 49.8% | 91 | 4.3% | 965 | 45.9% | - |
| Breaux Bridge High | 384 | 49.7% | 21 | 2.7% | 368 | 47.6% | +1.7% |
| Cecilia High | 471 | 62.1% | 43 | 5.7% | 245 | 32.3% | -13.6% |
| St. Martinville Senior High | 191 | 33.5% | 27 | 4.7% | 352 | 61.8% | +15.9% |
| | | | | | | | |
| **District-Wide Total** | 3,479 | 48.1% | 357 | 4.9% | 3,399 | 47.0% | 7,235 |

Catahoula Elementary was closed during the 2022-2023 school year, and therefore, no enrollment figures are included above for that school.

## I.   LEGAL STANDARDS

The ultimate goal of every desegregation case, including this one, is the elimination of the vestiges of past segregation in all aspects of school operations to the extent practicable and, ultimately, a declaration that the school district has achieved unitary status.[29] Federal court

---

[29] *Freeman*, 503 U.S. at 489.

supervision of a local school system is intended to remedy the constitutional violation and, after unitary status has been achieved, to return control of the school system to the locally elected school board.[30]

The United States Supreme Court has described six areas of operation that must be free from racial discrimination before full unitary status can be achieved: (1) student assignment; (2) faculty assignment; (3) staff assignment; (4) extracurricular activities; (5) facilities; and (6) transportation.[31] Each of these "*Green* factors" may be considered individually, and a school district may achieve partial unitary status as to these factors one at a time such that federal judicial supervision is relinquished incrementally.[32] In order to secure a declaration of unitary status as to any one (or more) of the *Green* factors, the District must demonstrate, as to each specific factor, that it has complied in good faith with the desegregation decree for a reasonable period of time and that the vestiges of past discrimination have been eliminated to the extent practicable.[33] For each area of operation, if the facts reveal (a) no continued racial discrimination, (b) that the District has made good faith efforts to comply with the desegregation decree, and (c) that the District has made affirmative efforts to eliminate the vestiges of the prior discrimination, this Court may declare that factor unitary but retain continuing jurisdiction over the remaining factors until such time as unitary status is achieved in the remaining areas.[34]

## II.    AGREED REMEDIAL MEASURES REGARDING ATTENDANCE ZONES

### A.  The Desegregation Standard

The Supreme Court has stated that the "fundamental" inquiry and "critical beginning point"

---

[30] *Id.* at 489.
[31] *Green*, 391 U.S. at 435.
[32] *Freeman*, 503 U.S. at 489-91. A court may also consider other ancillary factors. Id. at 492.
[33] *Bd. of Educ. v. Dowell*, 498 U.S. 237, 249-50 (1991); see also Flax v. Potts, 915 F.2d 155, 158 (5th Cir. 1990); *Monteith v. St. Landry Pub. Sch. Bd.*, 848 F.2d 625, 629 (5th Cir. 1988).
[34] *Freeman*, 503 U.S. at 490-91.

in assessing a school district's compliance with a desegregation decree is determining whether its schools remain racially identifiable.[35] Courts rely on multiple factors, including student enrollment and faculty and staff assignment, to determine whether a school is racially identifiable.[36] Racial identifiability often focuses on calculating the extent to which a school's student enrollment by race deviates from the district-wide student enrollment by race for the comparable grade levels, *e.g.*, elementary, junior high, and high schools.[37] The Parties agree and the Court finds that a plus or minus fifteen percent (+/-15%) variance from the Black enrollment is within accepted standards for this purpose and provides a reasonable starting point in this case for moving toward a unitary status determination.[38]

For the 2022-2023 school year, the District-wide percentage of Black students was 47.0%. The actual enrollment percentage of Black elementary students was 47.4%; therefore, elementary schools that complied with the +/-15% desegregation standard would have had an actual Black enrollment between 32.4%-62.4%; the actual enrollment percentage of Black middle school students was 47.5%; therefore, middle schools that complied with the +/-15% desegregation standard would have had an actual Black enrollment between 32.5%-62.5%; the actual enrollment percentage of Black high school students was 45.9%; therefore, high schools that complied with the +/-15% desegregation standard would have had an actual enrollment between 30.9%-60.9% Black.

In subsequent school years, compliance with the +/-15% desegregation standard will be based on the District-wide actual enrollment of Black elementary students for the preceding school

---

[35] *Id.* at 474.
[36] *United States v. West Carroll Par. Sch. Dist.*, 477 F. Supp. 2d 759, 763 (W.D. La. 2007).
[37] *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 25 (1971); *see also Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 319 (4th Cir. 2001).
[38] *Belk*, 269 F.3d at 319.

year as reported to the Court on November 15 of the respective year. Utilizing the +/-15% standard to assess the District's desegregation efforts, the 2022-2023 actual enrollment figures (which include valid transfers) reveal that four schools are racially identifiable: Cecilia Primary (-16.2%), the Early Learning Center (+16.7), St. Martinville Primary (+20.0%), and St. Martinville Senior High (+16.2%). Again, Catahoula Elementary was closed during this school year.

While "[c]onstructing a unitary school system does not require a racial balance in all of the schools,"[39] "[t]he district judge or school authorities should make every effort to achieve the greatest possible degree of actual desegregation."[40] The Parties agree and the Court finds that the remedial measures set forth below are designed to eliminate the vestiges of the prior discrimination and to address the Plaintiff Parties' concerns regarding the District's operations in the area of student assignment. The Parties agree and the Court finds, subject to the reservations stated above, that the relief detailed below will address such concerns and, if fully and properly implemented over a reasonable period of time, is designed to result in the achievement of unitary status and dismissal of the case in the area of student assignment.

### B.  Attendance Zones and Modifications

The Parties agree and the Court finds that, in light of the presently known facts, circumstances, and residential patterns at issue, the zone line modifications are practicable zone line adjustments that further desegregation.

---

[39] *Ross v. Hous. Indep. Sch. Dist.*, 699 F.2d 218, 228-29 (5th Cir. 1983).
[40] *Swann*, 402 U.S. at 26. *See Dowell*, 498 U.S. at 250 (requiring a court assessing whether a school district has achieved unitary status to consider "whether the vestiges of de jure segregation had been eliminated as far as practicable.").

12

### 1.  Cecilia Zone

The Cecilia PK-8 attendance zones shall remain the same as under the 2016 Consent Order.[41]

### 2.  Breaux Bridge Zone

The Breaux Bridge PK-8 attendance zone shall be modified, the southwestern portion will be shifted north to Prairie Highway and end at a point before Rookery Road, as identified in the maps and metes and bounds description attached as Exhibits 1 and 2, which are incorporated into this Consent Order as if fully set forth herein. These modifications affect no St. Martin Parish students as this area is currently undeveloped and uninhabited.

### 3.  Parks Zone and St. Martinville Zone

Beginning with the 2024-2025 school year, the District will alter the student assignment plan for the Parks and St. Martinville PK-8 attendance zones, the central portion of the south Parks attendance zone line will extend south to the Cypress Island Highway and the northwest portion of the Parks attendance zone line will extend north toward the Cypress Island Highway, Theobald Road, and Par Road 323. The St. Martinville zone will extend north to Prairie Highway, incorporate portions of Rookery Road, and include portions of Main Highway, as identified in the maps and metes and bounds description attached as Exhibits 1 and 2, which are incorporated into this Consent Order as if fully set forth herein.

During the 2023-24 school year: the enrollment at Parks Primary was 41.5% Black, 5.9 points below the +/-15% desegregation standard; Parks Middle was 51.7% Black; 4.2 points above the +/-15% desegregation standard; the Early Learning Center was 64.1% Black, 16.7 points above the +/-15% desegregation standard; St. Martinville Primary was 67.4% Black, 20.0 points above

---

[41] *Id.*

13

the +/-15% desegregation standard.[42] The Parties believe the proposed attendance zone modifications will result in each of the Parks and St. Martinville schools, that serve grades PK-8, coming within the +/-15% desegregation standard. The Parties acknowledge that Catahoula Elementary may open as a Pre-K-1 school after the successful implementation of the magnet academies, and that its opening will affect the racial makeup percentages at the Early Learning Center.

### 4.  High Schools

The high school attendance zones shall remain the same as under the 2016 Consent Order,[43] except that the high school attendance zone boundary between Breaux Bridge and St. Martinville shall be modified, the western portion of the line will begin by following Prairie Highway, will extend southeast to end at a point before Rookery Road, then northeast to a point near Ruth Drive, then north to a point near Main Highway, then east to Bayou Teche, then southeast to a point near James Road, then south to Main Highway, then west to the intersection of Main Highway and True Friend Road, then southeast to the intersection of True Friend Road and Rousseau Poche Road, then south along Rousseau Poche Road to a point near Theobold Road, then will follow the existing high school attendance zone boundary line between Breaux Bridge and St. Martinville, as identified in the maps and metes and bounds description attached as Exhibits 1 and 2, which are incorporated into this Consent Order as if fully set forth herein.

The modifications to the western portion of the attendance zone boundary between Breaux Bridge and St. Martinville, beginning at the western edge of the Breaux Bridge and St. Martinville

---

[42] See Table 1.
[43] See Exhibit 1 to 2016 Consent Order re Student Assignment, Record Document 211-1 at 32.

14

Zones and ending at a point before Rookery Road, presently affect no St. Martin Parish students, as this area is currently undeveloped and uninhabited.

Students who are enrolled in the high schools impacted by these changes and who are enrolled in grades 11 and 12 during the 2023-24 school year may choose to remain at their 2023-24 zoned school until the end of the 2025-26 school year or until they complete grade 12, whichever occurs later. Parents/guardians must inform the District of their desire to exercise this option as soon as practicable after entry of this Consent Order.

### 5.  Catahoula

The Court has determined that the School Board may reopen Catahoula Elementary as a PK-1 school with its pre-2016 attendance zone boundaries after a viable magnet program as approved by the Court has been operated or provided for a full school year at the Early Learning Center and St. Martinville Primary.[44]

### 6.  Stephensville

Although the Stephensville Elementary enrollment figures fall outside the acceptable +/- 15% desegregation standard, the Parties agree and the Court finds that the Stephensville Elementary attendance zone is geographically isolated such that no further practicable measure can be utilized to engender desegregation. Therefore, the Stephensville Elementary zone shall not be a consideration in the analysis for achieving unitary status in the area of student assignment. However, the District shall not take any action that will hinder desegregation of the Stephensville zone.

### 7.  2024-2025 School Year Enrollment Report

On September 16, 2024, the District will file with the Court and provide to the Plaintiff

---

[44] Record Document 707.

Parties a student enrollment report for those schools affected by the zone changes proposed in this Consent Order. The student enrollment report will show the effect(s) the attendance zone changes have had on desegregation of the schools and shall provide a comparison to the Parties experts' enrollment projections.

### 8.  Residency Verification

Because the above projections are based, in part, on student residency information, the Parties agree and the Court finds that the District shall strictly implement its residency verification policy and transfer policy, which shall be revised to be consistent with this Consent Order.

Accordingly, within 60 days of entry of this Consent Order, the District shall provide the Plaintiff Parties with a proposed revision of the residency verification and transfer policy. The Plaintiff Parties shall have 30 days following receipt of the proposed revised policies to provide the District with comments regarding the proposed revision(s). The Parties shall meet and confer (either via telephone, videoconference, or in person) as necessary to reach agreement on these policies. If the Parties are unable to reach agreement regarding the revision within 120 days of entry of this Consent Order, any party may move the Court to resolve the dispute.

Until such time that the District is declared unitary concerning student assignment and the student assignment *Green* factor is dismissed, the above procedure shall be used to address each subsequent modification to the District's residency verification and student transfer policies.

### 9.  Notice and Marketing

As soon as practicable, but in no event longer than 14 calendar days, after entry of this Consent Order, the District shall communicate information describing the attendance zone modifications directly to all parents/guardians through at least two media (e.g., hard copy letters by mail, J calls, email, newspaper, website, etc.). These efforts shall also include providing

information to parents/guardians of students in grades 11 and 12 impacted by the attendance zone changes, including information about the form families must complete to remain at the school to which they were assigned at the end of the 2023-2024 school year, how parents can access virtual and hard copies of that form, how parents can submit that form electronically and via hard copy, and that the form must be completed no later than two (2) weeks after the District communicates information describing the attendance zone modifications through at least two forms of media. In communicating with parents/guardians, the District will include efforts designed to reach parents/guardians who face barriers to receiving information, including lack of digital access. Within two (2) weeks of the entry of this Consent Order, the District will add a webpage to the St. Martin Parish School District website featuring an interactive online map that families can use to determine their attendance zone. This webpage will be accessible from the homepage of the St. Martin Parish School District website.

The District shall provide documentation of this notice process to the Plaintiff Parties for review and comment one week prior to the implementation of the notice process.

### 10. Capacity

The District shall ensure that adequate space and capacity are made available for all students at each of the schools affected by the zone changes described infra.

Until such time that the District is declared unitary concerning student assignment and this *Green* factor is dismissed, the District shall provide the Plaintiff Parties with notice of each proposed change to the functional capacity of each District school for any reason (e.g., any increases or decreases in the number of classrooms or the classroom capacities). The Plaintiff Parties shall have fourteen (14) calendar days following receipt of the proposed changes to provide the District with objections regarding the proposed change. To the extent that the Plaintiff Parties

raise objections, the Parties shall meet and confer (either via telephone, videoconference, or in person) as necessary to reach agreement as to these changes. If the Parties are unable to reach agreement regarding a proposed change, any party may move the Court to resolve the dispute.

### 11. Majority-to-Minority transfers

Students who are currently enrolled in any school as a M-to-M transfer for the 2023-2024 school year shall not be impacted by the zone changes. These students may remain in their current M-to-M host school until the completion of the highest grade level at that school. To the extent the District provides any student with free transportation to and/or from events held outside of regular school hours (e.g., after-school extracurricular activities), the District will continue to extend the same free transportation to students granted M-to-M transfers, as required by the Consent Order Regarding St. Martinville Zone Magnet and District-Wide Transfer Programs. Record Document 694, Section II.G.

### 12. Transition Assistance for Majority-to-Minority Transfers and Students Reassigned as A Result of Attendance Zone Changes

Within forty-five (45) days of the entry of this Consent Order, the District shall provide to the Plaintiff Parties for review, comment, and approval all changes to the transfer transition assistance procedure to be implemented during the 2024-2025 school year. The District will continue to maintain the transfer transition assistance procedure.

### III.    MONITORING, REPORTING, AND OVERSIGHT

The District shall file and submit to the Court, and to counsel of record for all Parties, reports pursuant to this Consent Order until such time as the District is declared unitary. The District shall submit these reports on the first business day after each November 15, March 15, and June 30; However, the first M-to-M report after entry of this Consent Order shall be due on August 15, 2024. Each report shall include a key for all codes or abbreviations used therein.

18

### A. November 15 and March 15 Reports

Each November 15 and March 15 report must include the following information:

1.     A chart indicating the total number and percentage of students, by grade level and race, enrolled in each school and district-wide in the District and a +/- calculation showing the difference between each school's percentage of Black students and the District-wide percentage of Black students within that grade band.

2.     For each class in each school: (a) the number of students by race and grade level; (b) the name and race of the faculty member(s) assigned to the classroom; (c) whether any students in the class are grouped or assigned by race, ability, achievement, language needs, or another basis; (d) the subject of the class; and (e) whether the class is an elective or a non-elective course.

### B. June 30 Report

All reports shall include the following information for the time period since the last report was submitted:

1.     A complete description of all specific efforts, if any, the District has taken to encourage students to engage in M-to-M transfers, including copies of all written notices disseminated or posted by the District; all specific efforts, if any, the District has taken to make the M-to-M application and attendance zone information more accessible to students and families; and, for the August 15, 2024 report, a complete description of all specific efforts, if any, the District has taken to advise families of the attendance zone changes.

2.     A list of students who applied for an M-to-M transfer since the last report was filed (except that the August 15, 2024 report shall include the requested information since the start of the second semester of the 2022-2023 school year) that identifies each applicant by race, home school, receiving school, and if denied, the reason for denial, to be filed under seal.

    3.       The impact of M-to-M transfers on progress towards or regress from desegregation goals.

## IV.    MODIFICATIONS

Until such time that the District is declared unitary concerning student assignment and this *Green* factor is dismissed, the District must obtain the Court's approval of all modifications to the attendance zones, grade structures (e.g., modifying an elementary school that used to serve grades PK-4 so that it will serve grades PK-5 instead), and educational programs at each of the District schools (e.g., the establishment or modification of a magnet program).

## V.    OBJECTIONS

Specific written objections by the Plaintiff Parties to the March 15th, June 30th, and November 15th reports, including objections related to the District's compliance with the +/-15% desegregation standard, shall be submitted within forty-five (45) calendar days of receipt of each report or such objections will be deemed waived and a presumption of compliance with the reporting requirements of the preceding reporting period will be applied. The Parties will meet and confer (either via telephone, videoconference, or in person) about each objection within fourteen (14) business days of service of the objection. In good faith, the District will consider proposals from the Plaintiff Parties to address their objections regarding the District's compliance with the Consent Order. In the event that the Parties reach an impasse as to either (a) whether an objection has merit or (b) how to remedy any concerns raised in an objection, any party may move the Court to resolve the dispute so long as the motion is made within forty-five (45) calendar days of the meet and confer.

## VI.    TERMINATION OF JUDICIAL SUPERVISION

The Parties agree that full compliance with this Consent Order will support a finding that the District has complied with both the letter and the spirit of the orders governing this matter as they pertain to student assignment and that the vestiges of segregation in the area of student assignment have been eliminated to the extent practicable.[45] The Parties agree, and the Court holds, that "whatever plan is adopted will require evaluation in practice, and the court should retain jurisdiction until it is clear that state-imposed segregation has been completely removed."[46]

The District must implement the Court approved magnet plan for a minimum of two school years, that is, for two years after the Court signs a viable magnet plan order. Forty-five (45) calendar days subsequent to the conclusion of that second school year, the District may move for unitary status and dismissal on student assignment and/or the Plaintiffs Parties may move for further relief or to enforce the Consent Order on student assignment. The applicable provisions of the Federal Rules of Civil Procedure and the Local Rules of this Court will apply to all such motions. In the absence of a response in opposition to a motion for unitary status, a motion to enforce the Consent Order, or a motion for further relief by the Plaintiff Parties, and subject to this Court's ruling that the District is in compliance with this Consent Order, Title IV of the Civil Rights Act of 1964, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Court may declare the District unitary with respect to student assignment and dismiss this case as to student assignment.

## VII.    EFFECT OF PRIOR ORDERS

All prior orders not inconsistent herewith remain in full force and effect.

---

[45] *See Freeman*, 503 U.S. at 485.
[46] *Green*, 391 U.S. at 439.

21

HEREBY  ORDERED,  ADJUDGED,  AND  DECREED,  this  the 23rd day  of

JULY_____, 2024.

**ELIZABETH ERNY FOOTE**
**UNITED STATES DISTRICT JUDGE**

22

**APPROVED REGARDING FORM AND CONTENT:**

**For Plaintiffs:**

/s/ Kevin E. Jason
Deuel Ross
Victor Jones
Joseph Wong
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300

Kevin E. Jason
Katrina Feldkamp
Michele St. Julien
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
99 Hudson Street, 16th Fl.
New York, NY 10013
(212) 965-2200
(212) 226-7592 Fax

/s/ Gideon T. Carter, III
Gideon T. Carter, III
Bar Roll Number 14136
PO Box 80264
Baton Rouge LA 70898-0264
(225) 214-1546 office
(225) 341-8874 fax
E-Mail:  gideontcarter3d@gmail.com

**For Plaintiff-Intervenor, UNITED STATES OF AMERICA**

KRISTEN CLARKE
Assistant Attorney General

/s/ Christopher S. Awad
SHAHEENA A. SIMONS
FRANZ R. MARSHALL
CHRISTOPHER S. AWAD
MEGAN ABBOT
Educational Opportunities Section
U.S. Dept. of Justice, Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

BRANDON BONAPARTE BROWN
United States Attorney
For the Western District of Louisiana

/s/ Allison Reppond
ALLISON REPPOND (TX#24085733)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318) 676-3614

**For Defendant, ST. MARTIN PARISH SCHOOL BOARD**

**HAMMONDS, SILLS, ADKINSGUICE, NOAH & PERKINS, LLP**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, LA 70808
Telephone (225) 923-3462
Facsimile (225) 923-0315

/s/ John R. Blanchard
**Robert L. Hammonds**
Louisiana Bar No. 6484
**Pamela Wescovich Dill**
Louisiana Bar No. 31703
**John Richard Blanchard**
Louisiana Bar No. 37036
**Timothy J. Riveria**
Louisiana Bar No. 39585
**John Scott Thomas**
Louisiana Bar No. 22635